UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MANUEL MARTIR,

    Petitioner,

v.

A LIZARRAGA,

    Respondent.

Case No. 15-cv-00948-HSG

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY**

Before the Court is the above-titled *pro se* petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254 by petitioner Manuel Martir, challenging the validity of a judgment obtained against him in state court. Respondent has filed an answer to the petition. Petitioner has not filed a traverse, and the deadline to do so has long since passed. For the reasons set forth below, the petition is denied.

## I. PROCEDURAL HISTORY

On March 1, 2011, the San Francisco County District Attorney filed an information charging Petitioner with forcible sexual penetration of the vagina by a foreign object (Cal. Pen. Code § 289(a)(1)(A)); forcible sexual penetration of the anus by a foreign object (Cal. Pen. Code § 289(a)(1)(A)); battery causing serious bodily injury (Cal. Pen. Code § 243(d)); assault with a deadly weapon (Cal. Pen. Code § 245(a)(1)); forcible rape (Cal. Pen. Code § 261(a)(2)); forcible sodomy (Cal. Pen. Code § 286(c)(2)(A)); attempted murder (Cal. Pen. Code §§ 667, 187(a)); and false imprisonment (Cal. Pen. Code § 236). CT at 52–57.[1]

---

[1] All references herein to exhibits are to the exhibits submitted by Respondent in support of the answer, unless otherwise indicated. References to "CT" and "RT" are to the Clerk's Transcript and Reporter's Transcript of the state proceedings, Exs. A and B, respectively.

On January 7, 2012, a jury found Petitioner guilty of two counts of forcible sexual penetration by a foreign object, battery with serious bodily injury, assault with a deadly weapon, and found true the allegations of serious bodily injury and use of a deadly weapon. CT at 558–60, 641–43. The jury acquitted Petitioner of forcible rape, forcible sodomy, and attempted murder. CT at 555, 560. The jury could not reach a verdict on the count of false imprisonment and, on the prosecution's motion, this count was dismissed. CT at 558–60, 635.

On October 12, 2012, the trial court sentenced Petitioner to 24 years to life in state prison. CT at 635. On April 30, 2014, the California Court of Appeal affirmed the judgment in an unpublished opinion. *People v. Martir*, No. A137098, 2014 WL 1691520 (Cal. Ct. App. Apr. 30, 2014). On July 9, 2014, the California Supreme Court denied review. Answer, Ex. H.

On March 2, 2015, Petitioner filed the instant federal petition for a writ of habeas corpus pursuant to 28 U.S.C § 2254.

## II. STATEMENT OF FACTS

The following background facts describing the crime and evidence presented at trial are from the April 30, 2014 opinion of the California Court of Appeal:[2]

> In the early morning hours of December 21, 2009, law enforcement officers found Mary B. on the street, conscious but bleeding and naked from the waist down. Mary was brought to the hospital around 2:00 a.m. She was bleeding from her vagina and anus, and her perineum exhibited signs of trauma. Her face and neck had multiple lacerations and were embedded with glass shards. There was bleeding underneath the surface layer of her eyes, a condition which can be caused by choking. The treating physician testified Mary's injuries were approximately one hour old at the time she was treated, and were consistent with physical and sexual assault.
>
> Mary did not testify at trial, but her preliminary hearing testimony was read to the jury. She was working as a prostitute on the night in question. Appellant, whom she did not previously know, picked her up in a brown Volvo and they agreed to exchange sex for money. Shortly after she got in his car, he broke a bottle over her head, cut her face and throat with the broken bottle, and began choking her. Mary drifted in and out of consciousness. She thought something penetrated her anus, but was not sure. She was not sure whether any other part of her body was penetrated. She thought she saw appellant's penis, but was not sure when. She did not remember how her clothes were removed or how she got out of the car. She denied taking any drugs that night, and testified she drank only one beer before the assault.

---

[2] This summary is presumed correct. *Hernandez v. Small*, 282 F.3d 1132, 1135 n.1 (9th Cir. 2002); 28 U.S.C. § 2254(e)(1).

Police officers and a nurse testified about statements Mary made during the two days after the attack. A police officer interviewed Mary shortly after she arrived at the hospital. She told the officer she had been walking down the street when a man followed her on foot, attacked her with a glass bottle, cut her face, choked her, and raped her. She said she was in and out of consciousness during the attack. Police officers conducted a second interview that afternoon. Mary stated her attacker put his hand "into her rear area," but she could not remember whether or not he raped her or forced her to orally copulate him. A third police interview was conducted the following day. During this interview, Mary admitted she had been working as a prostitute that night and the attack took place inside a car. She again stated she had been attacked with a bottle and choked.

Nurse practitioner Ruth Ann Armstrong conducted a partial sexual assault examination of Mary starting at 8:00 a.m. on the morning of the attack. Mary stated her attacker had broken a bottle over her head, cut her face and neck, and choked her into unconsciousness. She told Armstrong the man put his finger in her anus. She also told Armstrong, "I think he put his fingers in my vagina. I kept blacking out." Mary thought she orally copulated him but was not sure. Armstrong completed the sexual assault examination the following day. During this interview, Mary stated she did not remember if her attacker vaginally penetrated her. Mary denied using drugs within 96 hours of the incident, although a urine toxicology screen indicated the presence of cocaine and opiates.

Armstrong's physical examination of Mary revealed significant swelling of the labia, lacerations in the anal area, and blood in the area of the vagina and anus. Armstrong testified these injuries were consistent with sexual assault and/or trauma.

Police found a brownish Volvo near where Mary had been found. Inside the car was broken glass, a large amount of blood, and articles of clothing matching the description of clothes Mary told police she had been wearing. The original owner of the Volvo had sold it to appellant in May 2009. Appellant's fingerprint was found on a piece of paper in the Volvo.

Appellant, through an interpreter, testified at trial in his own defense. On the night in question, he picked up Mary in his Volvo. She did not have any injuries at that time. Appellant and Mary agreed that, in exchange for sex, they would both smoke appellant's drugs and appellant would pay Mary $20. Mary removed her shoes and pants, and they smoked appellant's rock cocaine. Mary began to orally copulate appellant. She then asked him for more drugs; when he refused, they began to physically fight. During the fight, appellant heard a glass bottle, which had been in the backseat, break. Mary came at appellant with the broken bottle in her hand and the two struggled over it, but appellant never had the bottle in his hands. Eventually appellant pushed Mary out of the car. Since he could not find his car keys, appellant left the scene on foot.

Appellant admitted falsely telling police officers, in an interview after the incident, he had never seen Mary and did not have a car. Appellant also told police officers he "might have started beating her since I was all drugged up, but that's where I forget. I lost consciousness, but it's not that I—it's not that I had wanted to strike her. I got angry, and so I also struck her, but my—my intention was never to hit her, but she—she had asked for it."

The jury convicted appellant of forcible sexual penetration of the vagina by a foreign object (Pen. Code, § 289, subd. (a)(1)(A)), forcible sexual penetration of the anus by a foreign object (*id.*, § 289, subd. (a)(1)(A)), battery causing serious bodily injury (*id.,* §

3

243, subd. (d)), and assault with a deadly weapon (*id.,* § 245, subd. (a)(1)). [FN 2] The jury acquitted appellant of forcible rape (*id.,* § 261, subd. (a)(2)), forcible sodomy (*id.,* § 286, subd. (c)(2)(A)), and attempted murder (*id.,* §§ 664, 187, subd. (a)). The jury could not reach a verdict on a count of false imprisonment (*id.,* § 236) and, on the prosecution's motion, this count was dismissed.

    FN 2: The jury also made findings on several enhancement allegations.

*Martir*, 2014 WL 1691520, at *1–*2 (footnote in original).

## III. DISCUSSION

**A.    Standard of Review**

A petition for a writ of habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000).  Additionally, habeas relief is warranted only if the constitutional error at issue "'had substantial and injurious effect or influence in determining the jury's verdict.'"  *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence.  "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Williams*, 529 U.S. at 412.  A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of

4

facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Id.* at 405–06. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003).

The state court decision to which § 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091–92 (9th Cir. 2005). The final state court decision from the California Supreme Court summarily denied Petitioner's petition for review. The California Court of Appeal was the last reasoned state court decision that addressed the claims Petitioner raises in the instant petition. Accordingly, in reviewing Petitioner's habeas petition, this Court reviews the California Court of Appeal's decision. *See Ylst*, 501 U.S. at 803–04; *Barker*, 423 F.3d at 1091–92.[3]

**B.      Petitioner's Claims**

Petitioner alleges two claims for habeas relief: (1) his rights under the Confrontation Clause were violated when the trial court admitted at trial the preliminary hearing testimony of the victim; and (2) his rights under the Confrontation Clause were violated when the trial court admitted the statements that the victim made to a nurse during her sexual assault examination.

---

[3] Although *Ylst* was a procedural default case, the "look through" rule announced there has been extended beyond the context of procedural default. *Barker*, 423 F.3d at 1092 n.3 (citing *Lambert v. Blodgett*, 393 F.3d 943, 970 n.17 (9th Cir. 2004), and *Bailey v. Rae*, 339 F.3d 1107, 1112–13 (9th Cir. 2003)). The look through rule is applicable here as the Ninth Circuit has held that "it is a common practice of the federal courts to examine the last reasoned state decision to determine whether a state-court decision is 'contrary to' or 'an unreasonable application of' clearly established federal law" and "it [is] unlikely that the Supreme Court intended to disrupt this practice without making its intention clear." *Cannedy v. Adams*, 706 F.3d 1148, 1158 (9th Cir.), *amended*, 733 F.3d 794 (9th Cir. 2013).

### 1. Standard

The Confrontation Clause of the Sixth Amendment provides that in criminal cases the accused has the right to "be confronted with the witnesses against him." U.S. Const. amend. VI. The federal confrontation right applies to the states through the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403 (1965).

The ultimate goal of the Confrontation Clause is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. *Crawford v. Washington*, 541 U.S. 36, 61 (2004). It does not command that evidence be reliable, but rather that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. *Id.*; *see Davis v. Alaska*, 415 U.S. 308, 315–16 (1974) (noting a primary interest secured by the Confrontation Clause is the right of cross-examination).

The Confrontation Clause applies to all "testimonial" statements. *See Crawford*, 541 U.S. at 50–51. "Testimony . . . is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* at 51 (quoting Webster, An American Dictionary of the English Language (1828)); *see id.* ("An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."). The Confrontation Clause applies not only to in-court testimony but also to out-of-court statements introduced at trial, regardless of the admissibility of the statements under state laws of evidence. *Crawford*, 541 U.S. at 50–51. For purposes of federal habeas corpus review, the standard applicable to violations of the Confrontation Clause is whether the violation had an actual and prejudicial effect upon the jury. *See Hernandez*, 282 F.3d at 1144 (citing *Brecht*, 507 at 637).

### 2. Admission of Victim's Preliminary Hearing Testimony

Petitioner claims his rights under the Confrontation Clause were violated when the trial court admitted at trial the preliminary hearing testimony of the victim, Mary. The state appellate court rejected this claim as follows:

> I. Preliminary Hearing Testimony
> Appellant first contends the admission of Mary's preliminary hearing testimony was error under the confrontation clause of the United States Constitution and Evidence Code section

1291 because Mary was not unavailable to testify at trial. We disagree.

A. Factual Background
Before trial, appellant filed an in limine motion to exclude Mary's preliminary hearing testimony if she failed to testify at trial. An evidentiary hearing was held examining the prosecution's efforts to secure Mary as a witness at trial.

Prior to the preliminary hearing, a prosecution investigator personally served Mary with a subpoena directing her to appear at the preliminary hearing. Mary was argumentative and expressed a reluctance to come to court, saying she wanted to move on. However, she did appear and testify.

After the preliminary hearing, over a period of 10 months, Mary was personally served with four subpoenas ordering her to appear for four separate court dates. An additional subpoena for one of the four court dates was left with the front desk at her residence, pursuant to a telephonic agreement between the investigator and Mary. Mary did not appear in court for any of the four dates for which she was subpoenaed following the preliminary hearing.

At the time of each personal service and during the telephone conversation, Mary informed the investigators she would not appear in court and/or did not want to cooperate with the prosecution. Mary also telephoned the assistant district attorney after receiving one of the subpoenas. She was very agitated and stated she was not coming to court and wished to be left alone.

When the last subpoena was served, after initially refusing to appear in court, Mary eventually agreed to accept a ride to court from investigators. However, when the investigators came to her apartment on the designated day, Mary did not answer the door. Instead, they found a note stating, "Sorry I can't make it today. So do, Ms. DA, what you need to do. Stop coming by this door. Thank you. Mary."

Based on this evidence, the trial court concluded the prosecution had exercised reasonable diligence in attempting to secure Mary's presence at trial, and therefore she was unavailable to testify and her preliminary hearing testimony could be admitted.

B. Analysis
"A criminal defendant has the right, guaranteed by the confrontation clauses of both the federal and state Constitutions, to confront the prosecution's witnesses." (*People v. Herrera* (2010) 49 Cal.4th 613, 620 (*Herrera*).) However, there is "'"an exception to the confrontation requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant [and] was subject to cross-examination...."'" (*Id.* at p. 621.) This exception "is codified in the California Evidence Code. [Citation.] Section 1291, subdivision (a)(2), provides that 'former testimony,' such as preliminary hearing testimony, is not made inadmissible by the hearsay rule if 'the declarant is unavailable as a witness,' and '[t]he party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing.'" (*Ibid.*, fns. omitted.) [FN 3]

> FN 3: Appellant does not argue he had insufficient prior opportunity to cross-examine Mary.

"A witness who is absent from a trial is not 'unavailable' in the constitutional sense unless the prosecution has made a 'good faith effort' to obtain the witness's presence at the trial." (*Herrera*, *supra*, 49 Cal.4th at p. 622.) The "Evidence Code features a similar requirement for establishing a witness's unavailability. Under section 240, subdivision (a)(5) ..., a witness is unavailable when he or she is '[a]bsent from the hearing and the proponent of his or her

7

statement has exercised reasonable diligence but has been unable to procure his or her attendance by the court's process.' " (*Ibid.*) Accordingly, "to establish unavailability, the prosecution must show that its efforts to locate and produce a witness for trial were reasonable under the circumstances presented." (*Id.* at p. 623; *see also id.* at p. 622 [holding "'California law and federal constitutional requirements [regarding the reasonable diligence inquiry] are the same'"].)

When the witness is a victim of sexual assault, the determination of reasonableness implicates another statutory provision. Code of Civil Procedure section 1219, subdivision (b), provides, in relevant part, "Notwithstanding any other law, no court may imprison or otherwise confine or place in custody the victim of a sexual assault ... for contempt when the contempt consists of refusing to testify concerning that sexual assault...." The California Supreme Court has held the enactment of this provision "reflects the Legislature's view that sexual assault victims generally should not be jailed for refusing to testify against the assailant." (*People v. Cogswell* (2010) 48 Cal.4th 467, 478 (*Cogswell*).)

"We review the trial court's resolution of disputed factual issues under the deferential substantial evidence standard [citation], and independently review whether the facts demonstrate prosecutorial good faith and due diligence [citation]." (*Herrera*, *supra*, 49 Cal.4th at p. 623.)

Appellant contends the trial court erred in finding Mary unavailable because the prosecution failed to seek an order taking Mary into custody to ensure her presence in court or an order fining her for refusing to appear or testify. Similar arguments have been rejected by the California Supreme Court in *Cogswell*, *supra*, 48 Cal.4th 467 and *People v. Smith* (2003) 30 Cal.4th 581 (*Smith*).

In *Cogswell*, a victim of sexual assault testified at the defendant's preliminary hearing, but refused to voluntarily appear at trial and subsequently refused to comply with a subpoena to appear. (*Cogswell*, *supra*, 48 Cal.4th at pp. 471–472.) The victim informed the prosecutor and the prosecution's investigator that she would not appear at trial. (*Id.* at p. 473.) The trial court found the witness unavailable and allowed her preliminary hearing testimony admitted at trial. (*Ibid.*) On appeal, the defendant argued the prosecution failed to show reasonable diligence because it did not seek to take the victim into custody to secure her presence at trial. (*Ibid.*) Although the victim resided out of state, such a measure, similar to orders directing the confinement of material witnesses to ensure their presence at trial, was authorized by statute. (*Id.* at pp. 471, 475.)

*Cogswell* held that, even though the prosecution "could have" sought to take the victim into custody to secure her presence at trial, "it was not required to do so in order to show in this case the sexual assault victim's unavailability as a witness at defendant's trial." (*Cogswell*, *supra*, 48 Cal.4th at p. 476.) The court noted, "To have a material witness who has committed no crime taken into custody, for the sole purpose of ensuring the witness's appearance at a trial, is a measure so drastic that it should be used sparingly. [Citation.] Confinement would be particularly problematic when, as in this case, the witness is a sexual assault victim." (*Id.* at pp. 477–478.) [FN 4] The court concluded that, because of the victim's statements to the prosecution that she would not testify against the defendant, her refusal to appear at trial, and her refusal to comply with a subpoena ordering her to appear, "[i]t is highly unlikely that had [the victim] been taken into custody, she would have become a cooperative witness. Moreover, if she had been transported against her will to California and then refused to testify, the trial court could not have held her in contempt and jailed her until she agreed to testify, because that remedy (ordinarily available when a witness refuses to testify) is not available when the witness who refuses to testify is a sexual assault victim. [Citation.] Having spoken directly to [the victim], the prosecutor was in the best position to assess the strength of her determination not to testify at [the] defendant's trial. Based on that assessment, the prosecutor could reasonably conclude that [taking the victim into custody to secure her presence at trial]

would not have altered [her] decision not to testify again about the sexual assault, and thus it would have been a waste of time and resources." (*Id.* at pp. 478–479.)

> FN 4: *Cogswell* explained the special concerns regarding witnesses who are victims of sexual assault: "To relive and to recount in a public courtroom the often personally embarrassing intimate details of a sexual assault far overshadows the usual discomforts of giving testimony as a witness. And the defense may, through rigorous cross-examination, try to portray the victim as a willing participant. [Citation.] Also, seeing the attacker again—this time in the courtroom—is for many sexual assault victims a visual reminder of the harrowing experience suffered, adding to their distress and discomfort on the witness stand. [Citation.] It comes as no surprise, therefore, that often a victim of sexual assault is hesitant to report the crime. Even fewer such crimes would be reported if sexual assault victims could be jailed for refusing to testify against the assailant." (*Cogswell*, *supra*, 48 Cal.4th at p. 478.)

In *Smith*, our Supreme Court also affirmed a trial court ruling finding a victim of sexual assault unavailable to testify at trial. In that case, the witness refused to testify at the penalty phase of the capital defendant's trial unless she could express her opposition to the death penalty. (*Smith*, *supra*, 30 Cal.4th at p. 621.) The trial court "questioned [the witness] under oath and asked whether additional time or prosecution for criminal contempt would change her mind. It had no power to incarcerate this victim of a sexual assault for refusing to testify concerning that assault. [Citation.] But [the] defendant argue[d] the court should at least have fined her for contempt of court." (*Id.* at p. 624.) The Supreme Court disagreed, stating: "Trial courts 'do not have to take extreme actions before making a finding of unavailability.'" (*Ibid.*; see *Cogswell*, *supra*, 48 Cal.4th at p. 479 [discussing *Smith*].)

Appellant attempts to distinguish *Cogswell* and *Smith* on their facts, noting Mary testified at the preliminary hearing despite expressing reluctance when served with the subpoena for that hearing and never said she would refuse to testify if brought to court. Therefore, appellant argues, there was an insufficient showing Mary would not have testified had she been taken into custody to ensure her presence in court or threatened with fines.

We disagree. Mary did testify at the preliminary hearing. However, after the preliminary hearing Mary ignored five separate subpoenas ordering her to appear for four court dates. Over a 10–month period, she consistently informed investigators and the assistant district attorney she did not want to appear in court. Although she once reluctantly agreed to accept a ride to court, she subsequently left a note informing the investigators she would not be appearing. In light of these facts, it was not unreasonable for the prosecution to conclude that neither taking her into custody to ensure her presence at trial nor a fine would have altered Mary's decision not to testify at trial. Because Mary was therefore unavailable, the admission of her preliminary hearing testimony was not error.

*Martir*, 2014 WL 1691520, at *2–*5 (footnotes in original).

The Confrontation Clause applies to all out-of-court testimonial statements offered for the truth of the matter asserted, i.e., "testimonial hearsay." *See Crawford v. Washington*, 541 U.S. 36, 51 (2004). Testimonial hearsay is barred under the Confrontation Clause unless (1) the witness is unavailable, and (2) the defendants had a prior opportunity to cross-examine the witness. *Id.* at 59. Prior testimony at a preliminary hearing is considered testimonial hearsay. *Id.* at 68. As explained by the Supreme Court, a finding of unavailability requires that "the prosecutorial

authorities have made a good-faith effort to obtain [the witness's] presence at trial." *Barber v. Page,* 390 U.S. 719, 725 (1968). The government must show reasonable efforts to this end. *Hardy v. Cross,* 132 S. Ct. 490, 494 (2011). "'Good faith' and 'reasonableness' are terms that demand fact-intensive, case-by-case analysis, not rigid rules." *Christian v. Rhode,* 41 F.3d 461, 467 (9th Cir. 1994).

      The state appellate court's finding that the prosecution made good faith and reasonable efforts to secure Mary's attendance at the trial was not based on an unreasonable determination of the facts in light of the evidence presented at trial. The record shows that prosecution investigators made multiple efforts to secure Mary's attendance at trial. Prosecution investigators personally served subpoenas on Mary five times within a ten-month period, RT 196–97, 201–06, 226–43, 246, 248, 251, 257, 272; staffed the case with a female investigator to address Mary's hostility towards the male investigator initially assigned to serve the subpoenas; twice offered to drive Mary to court, RT 199–200, 213; and told Mary that failing to appear at court "wasn't an option" and could result in her arrest, RT 213, 223–24. Petitioner argues that prosecution's efforts fell short of good faith because the prosecution did not issue a body attachment or material witness warrant or threaten Mary with fines. However, the Supreme Court has held that while "it is always possible to think of additional steps that the prosecution might have taken to secure the witness' presence, [ ] the Sixth Amendment does not require the prosecution to exhaust every avenue of inquiry, no matter how unpromising." *Hardy*, 132 S. Ct. at 495. Moreover, it was reasonable for the prosecution to forgo issuing a warrant or assessing fines when Mary had repeatedly and aggressively expressed her refusal to testify, even after prosecution investigator Posada told her that failure to appear could result in her arrest. The state appellate court's conclusion that the prosecution's efforts to secure Mary's attendance at trial were sufficient to fulfill the prosecution's duty to make a good-faith effort was not contrary to, nor an unreasonable application of, clearly established Supreme Court law. *See Ohio v. Roberts*, 448 U.S. 56, 74–75 (1980), *abrogated on other grounds by Crawford*, 541 U.S. 36 (finding that witness' unavailability, in the constitutional sense, had been established where prosecution had issued a subpoena for the witness at her parents' home; prosecution visited the parents' home on five occasions over several months in an attempt to locate the witness; and parents were also trying to locate the witness).

In addition, the state appellate court's finding that Petitioner had a prior opportunity to cross-examine Mary also was not based on an unreasonable determination of the facts in light of the evidence presented at trial. The record indicates that Petitioner's public defender vigorously cross-examined Mary at the preliminary hearing. RT 25–50. The public defender elicited from Mary that when she was initially given a photo array, she was unable to identify Petitioner as the man who assaulted her, RT 27, and that she was unclear on many details, such as her assailant's ethnicity, RT 33; or her interactions with her assailant preceding the attack, RT 35–36. Similarly, the state appellate court's conclusion was not contrary to, or an unreasonable application of, clearly established Supreme Court law. The Supreme Court has held that "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986) (quoting *Delaware v. Fensterer,* 474 U.S. 15, 20 (1985) (per curiam)). That Petitioner was unable to impeach Mary with evidence that he obtained after the preliminary hearing does not render the cross-examination ineffective for purposes of the Confrontation Clause: the testimony the jury actually heard was fully subject to cross-examination at the preliminary hearing. *See*, *e.g.*, *Delgadillo v. Woodford*, 527 F.3d 919, 926 (9th Cir. 2008) (finding that testimony of unavailable witness given at a preliminary hearing was admissible at trial); *see Perez v. McDonald*, 2012 WL 1986294, at *13 (C.D. Cal. Feb.27, 2012) ("[I]n a number of post-*Crawford* cases, the Ninth Circuit has held that a state court did not unreasonably apply clearly established Supreme Court law in rejecting a Confrontation Clause claim directed to the admission of an unavailable witness's preliminary hearing testimony."). Accordingly, the state appellate court's conclusion that the admission of Mary's preliminary hearing testimony did not violate the Confrontation Clause was neither contrary to, nor an unreasonable application of, clearly established federal law.

Finally, any alleged constitutional error did not have a "substantial and injurious" effect or influence in determining the verdict. *Brecht*, 507 U.S. at 637–38. There was sufficient evidence, independent of Mary's preliminary hearing testimony that supported the jury's finding that Petitioner was guilty of forcible sexual penetration by a foreign object, battery with serious bodily injury, and assault with a deadly weapon. As Respondent points out, other witness testimony supported

Petitioner's guilt, and corroborated Mary's preliminary hearing testimony. Petitioner admitted that he was with Mary on the night of the assault and that she did not have injuries when she entered his car. RT 2107. The police officer testified that when he found Mary, she was crawling on the ground, naked from the waist down, and had large, bloody cuts on her body, face, and legs. RT 1583–84, 1587. The paramedic, the emergency room doctor and the emergency room nurse all testified that they observed significant lacerations on Mary that night. RT 804–11, 1175, 1790–92. The paramedic observed bleeding from Mary's genitalia. RT 1792. The emergency room doctor and nurse who conducted the sexual assault examination observed that Mary's vagina, perineum, and anus were bruised, significantly swollen, and bleeding, RT 825–26, 1187–91, 1203, and concluded that these injuries were consistent with sexual assault, RT 827.

Second, physical and forensic evidence supported a finding that Petitioner had committed these crimes. There was evidence that Petitioner and Mary had a sexual encounter in Petitioner's car that night. Petitioner's car was parked near where police had found Mary and contained clothing that matched the description Mary gave of her clothing, RT 1691–92, 1701–04; numerous blood stains, RT 1687–88; and a used condom, which tested presumptively for blood and saliva, of which Mary was a potential source, RT 1844, 1853, 1865–68. There was evidence of a struggle in Petitioner's car. Jagged glass fragments and bloodstains were found in the car. RT 1688-1709.

Finally, Petitioner's defense that Mary had sustained the injuries when she attacked him was inconsistent with Mary's physical injuries. Petitioner testified that Mary began to hit him when he took back his wallet and additional drugs from her. He testified that Mary grabbed the broken beer bottle and began to attack him with it, that she punched him multiple times, that that he only punched her once. RT 2049–55. Petitioner's credibility was undermined by his admission that he lied to police when initially interviewed regarding Mary's assault. RT 2108–32. Moreover, Petitioner's testimony was inconsistent with the physical evidence of trauma to Mary's genitalia.

Accordingly, Petitioner is not entitled to habeas relief on this claim.

### 2. Admission of Victim's Statements to Nurse

Petitioner claims his rights under the Confrontation Clause were violated when the trial court admitted at trial the statements made by the victim, Mary, to a nurse during her sexual

assault examination. The state appellate court rejected this claim as follows:

> II. Mary's Statements to Armstrong
> Appellant next challenges the trial court's admission of statements made by Mary to Armstrong, during the sexual assault examination, describing the attack.
>
> Appellant first contends the admission violated his rights under the confrontation clause. We will assume the challenged statements are testimonial. (*See People v. Vargas* (2008) 178 Cal.App.4th 647, 660–662 [holding victim's statements to nurse during a sexual assault examination are testimonial].) Appellant rests his constitutional argument on a challenge to the trial court's finding Mary was unavailable. We have already rejected that argument, and therefore reject appellant's confrontation clause challenge.
>
> Appellant next contends the statements were inadmissible hearsay. The trial court admitted the statements under the hearsay exception for spontaneous statements pursuant to Evidence Code section 1240. The parties dispute whether the trial court also admitted them as statements explaining the infliction of physical injury under Evidence Code section 1370 and whether the statements are admissible under that section.
>
> We need not decide if the trial court erred in admitting the challenged hearsay statements because any error was harmless. As we explain below, it is not reasonably probable the jury verdicts would have been more favorable to appellant had these statements been excluded. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)
>
> As to the convictions for assault and battery, the statements Mary made to Armstrong—her attacker hit her with a bottle, cut her face, and choked her—were entirely cumulative to those made in her preliminary hearing testimony and her statements to police officers.
>
> As to the convictions for vaginal and anal sexual penetration, appellant argues the statements made to Armstrong were more "specific and definite" than her preliminary hearing testimony and statements to police. As an initial matter, Mary consistently said, in her statements to Armstrong as well as her preliminary hearing testimony and statements to police, that she was in and out of consciousness during the attack and could not remember everything that happened. Moreover, while there are some inconsistencies between Mary's statements to Armstrong and her preliminary hearing testimony and statements to police, the inconsistencies were helpful to the defense in impeaching Mary. Indeed, appellant's counsel so noted in his closing argument, telling the jury: "And what do we have from ... Armstrong herself, that Mary ... was completely inconsistent in describing these possible sex acts, vaginal intercourse, completely inconsistent. Oral copulation, completely inconsistent."
>
> In any event, the physical evidence supporting the sexual penetration convictions was overwhelming. Mary was bleeding from the vagina and anus, exhibited significant swelling of the labia, and had lacerations in the anal area. Both Mary's treating physician and Armstrong testified her injuries were consistent with trauma and/or sexual assault. [FN 5]
>
>> FN 5: Appellant attempts to undermine this evidence, pointing to Armstrong's testimony that the injuries could have resulted from other causes. Armstrong testified, on cross-examination, that anal bleeding could be caused by hemorrhoids, a tumor, or skin irritation; vaginal bleeding could be caused by a vaginal infection or consensual sex; and swelling of the labia could be caused by certain infections, cysts, or tumors. However, it strains credulity to believe Mary simultaneously had those independent conditions at the time appellant physically assaulted her.
>
> Appellant points to the lack of DNA evidence linking him to the sexual assaults, and speculates a different attacker could have committed them. However, appellant admitted he

13

was with Mary that night, she was not injured when she entered his car, and they engaged in a physical fight. In addition, the credibility of appellant's version of events was undermined by his admission that he lied to police officers.

Finally, contrary to appellant's contention, the fact that the jury acquitted appellant of three counts and could not reach a verdict on a fourth does not indicate the evidence on the remaining counts was close. Although the evidence of forcible sexual penetration was overwhelming, the evidence that the penetration was caused by appellant's penis, as required for convictions on the rape and sodomy counts, was significantly weaker. Indeed, the prosecutor conceded during closing arguments: "We do know that her vagina had been injured by something. [¶] We don't know what he did to her vagina. We don't know if he put his penis in there"; and "as to her anus, we clearly know he penetrated her. We don't know for sure was it his penis that he had behind her choking her, or did he put his fingers in there." With respect to the attempted murder and false imprisonment charges, Mary's statements to Armstrong supported these charges to the same extent as her other statements and testimony. That the jury did not convict appellant on those counts demonstrates Mary's statements to Armstrong were not dispositive in the jury's mind. [FN 6]

> FN 6: Because we find the only error harmless, we reject appellant's contention that cumulative error prejudiced his rights to due process and a fair trial.

*Martir*, 2014 WL 1691520, at *5–*6 (footnotes in original).

Petitioner raises the same objection to the objection of Mary's statements to Nurse Armstrong that he raised to the admission of Mary's preliminary hearing testimony: that the state court erred in finding that Mary was unavailable, in a constitutional sense. As discussed above in Section B.2, the state appellate court's conclusion that Mary was unavailable was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. Nor was it based on an unreasonable determination of the facts in light of the evidence presented at trial. *See* Section B. 2 *supra*. Accordingly, the state appellate court's finding that the admission of Mary's statement to Nurse Armstrong did not violate the Confrontation Clause was not contrary to, nor an unreasonable application of, clearly established Supreme Court law, nor was it based on an unreasonable determination of the facts in light of the evidence presented at trial.

Petitioner's claims that Mary's statements to Nurse Armstrong were inadmissible pursuant to Cal. Evid. Code §§ 1240 (spontaneous statements), 1250 (present mental or physical state) are not a basis for federal habeas relief. Federal habeas relief does not lie for errors of state law unless the ruling violated a petitioner's due process right to a fair trial, *Estelle v. McGuire*, 502 U.S. 62, 70 (1991), and that standard is not met here.

Finally, any alleged constitutional error did not have a "substantial and injurious" effect or influence in determining the verdict. *Brecht*, 507 U.S. at 637–38. As discussed *supra* in Section B.2,

14

there was significant witness testimony, as well as physical and forensic evidence, outside of Mary's statement to Nurse Armstrong, that supported a finding of Petitioner's guilt. *See* Section B. 2 *supra*.

Accordingly, Petitioner is not entitled to habeas relief on this claim.

## C. Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability. *See* Rules Governing § 2254 Case, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard. *Id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, Petitioner has not made such a showing, and, accordingly, a certificate of appealability will be denied.

## IV. CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is DENIED, and a certificate of appealability is DENIED.

The Clerk shall enter judgment in favor of Respondent and close the file.

**IT IS SO ORDERED.**

Dated: 5/2/2016

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge